**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**HAROLD M. LEVINSON, et al.,**

        **Plaintiffs,**

                                      **Civil Action No. 4:06cv086**

  **v.**

**MASSACHUSETTS MUTUAL LIFE**
**INSURANCE COMPANY, et al.**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Presently before the Court is a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) filed by Defendants Massachusetts Mutual Life Insurance Company ("Mass Mutual") and Connecticut Mutual Life Insurance Company ("Connecticut Mutual"). The motion seeks to dispose of nine separate counts alleged by Plaintiffs Harold Levinson, Blanche Levinson, and Tony Levinson ("Plaintiffs"), against Mass Mutual, Connecticut Mutual, and John S. Pugh ("Defendants"), and requests both legal and equitable relief for alleged misrepresentations regarding the insurance policy Plaintiffs purchased from Defendants in 1988.

Plaintiffs filed suit on July 17, 2006, complaining that Defendants knowingly misrepresented the premium payments Plaintiffs would be required to pay during the life of the policy. After Plaintiffs paid what they believed to be a one-time lump sum premium payment in 1988, Defendants demanded that Plaintiffs make additional premium payments, nearly fifteen years later, in 2003. While Plaintiffs contest these additional demands for payment, Defendants maintain that Plaintiffs misunderstood their communications with the insurance agent, Mr. Pugh,

and now misunderstand the terms of the policy at issue.  On September 15, 2006, Defendants

Mass Mutual and Connecticut Mutual filed the instant Motion to Dismiss, to which Plaintiffs

responded on September 29, 2006.  Defendants Mass Mutual and Connecticut Mutual filed a

replication on October 10, 2006.  Additionally, on September 25, 2006, Defendant John S. Pugh

filed a Motion to Quash Service of Process, which the Court granted on October 24, 2006.

For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss two

claims for failure to state a claim upon which relief may be granted: Plaintiffs' RICO claim

(Count One), and breach of fiduciary duty claim (Count Five).  The Court **GRANTS**

Defendants' motion to dismiss six claims for Plaintiffs' failure to meet the pleading requirements

of Rule 9(b): common law fraud (Count Three), fraudulent inducement (Count Four), negligence

(Count Six), negligent misrepresentation (Count Seven), unjust enrichment and imposition of a

constructive trust (Count Eight), and reformation (Count Nine).  Said latter dismissals are subject

to Plaintiffs' right to amend the complaint as below set forth.  The Court **DENIES** Defendants'

motion to dismiss one claim: breach of express or implied contract (Count Two).  Although the

Court is skeptical of Plaintiffs' independent tort claims (and the remedies that rely thereon), it is

unwilling to dismiss those claims on a Rule 12(b)(6) motion without granting Plaintiffs an

opportunity to amend the complaint as provided by Rule 15(a).  If Plaintiffs desire to amend their

complaint, they must file the amended pleadings within eleven (11) days from the date of this

order, and Defendants shall file a response pleading within eleven (11) days after service of such

pleadings, if any.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations

In September 1988, Harold Levinson entered into discussions with Mr. Pugh, an agent of Defendant Connecticut Mutual located in Virginia Beach, Virginia,[1] regarding the purchase of life insurance.[2]  By letter dated September 26, 1988, Mr. Pugh discussed with Mr. Levinson several "single-premium policy" products and provided him with an illustration of a permanent life insurance policy that contained two unique payment schemes now the subject of dispute: (1) the Vanishing Premium Scheme, and (2) the Performance Scheme.

The Vanishing Premium and Performance Schemes represented a "likelihood that dividends and/or interest would 'perform' or accrue on [the policy to which the payment schemes applied] in specified amounts at specified future policy years, based upon then current dividend scales and/or interest rates."  Compl. ¶ 16.  The Vanishing Premium Scheme additionally possessed a feature in which the "accrued dividends and/or interest of the policy would be sufficient to pay the entire premium without additional monies from the policyholder such that . . . out-of-pocket premiums would end or 'vanish' after a specified amount of out-of-pocket premiums had been paid."  Compl. ¶ 17.  In other words, these payment schemes purported to enable a policyholder to make a one-time, lump-sum premium payment that would thereafter yield interest and dividend payments sufficient to finance the life of the policy.

---

[1] Plaintiffs initially entered into discussions with Defendant Connecticut Mutual and its agent, Mr. Pugh, in 1988.  However, between the time the parties entered into these discussions, and the filing of this suit on July 17, 2006, Connecticut Mutual merged with Mass Mutual.  The parties have not identified the precise date of such merger, though Plaintiffs allege that Mass Mutual "is the successor in interest to" Connecticut Mutual, as well as the "surviving company pursuant to the merger between itself and Connecticut Mutual Life Insurance Company." Compl. ¶ 4–5.

[2] This summary is based on the factual allegations contained in Plaintiffs' complaint which, only for purposes of resolving the Motion to Dismiss, are accepted as true.  See infra Part II.A.

3

Based upon Mr. Pugh's alleged representations regarding the payment schemes, Harold and Blanche Levinson purchased from Connecticut Mutual an insurance policy containing three discrete components: (1) Graded Premium Survivorship Whole Life Policy; (2) Survivorship Additional Benefits Rider; and (3) One-Year Term Insurance Rider (collectively, the "Policy"). Defendants issued this Policy to Plaintiffs on December 7, 1988, naming Tony Levinson as the insured.

As consideration for the Policy, Plaintiffs paid a total of $62,020.28.  Of this amount, a single payment of $57,043.32 was applied to "Single Pay" the Survivorship Additional Benefits Rider, which constitutes the component of the Policy now in dispute.  The precise date on which Plaintiffs paid this lump sum payment is unknown.  On November 30, 1989, Carol Sprague, an employee at Connecticut Mutual, sent Tony Levinson a letter informing him that, "This money [$57,043.32], along with any dividends that may be credited to the policy, can be used to pay the policy premiums in future years."  Letter from Carol A. Sprague, Customer Service Consultant, Connecticut Mutual, to Tony E. Levinson, Insured (Nov. 30, 1989).  In this same correspondence, Ms. Sprague stated that "dividends are not guaranteed by the company and if dividends and cash surrendered from the Survivorship Additional Benefits Rider are not sufficient to pay the premium due, then a cash payment will be required."  Id.  On December 20, 1989, Ms. Sprague sent Tony Levinson another letter intended to "clear up any misunderstanding that you [Tony Levinson] may have concerning the lump sum figure that I [Carol Sprague] gave to you in the letter addressed to you of [sic] November 30, 1989."  Letter from Carol A. Sprague, Customer Service Consultant, Connecticut Mutual, to Tony E. Levinson, Insured (Dec. 20, 1989).  That letter again stated that the "$57,043.32 single payment into the

Survivorship Additional Benefits Rider . . . along with any dividends that may be credited to the policy, will be used to pay the policy premiums in future years as they become due." Id.

In 2003, approximately fifteen years after Plaintiffs purchased the Policy, Mass Mutual—the surviving company of a merger between Mass Mutual and Connecticut Mutual—demanded that Plaintiffs pay additional premiums on the Policy.  Plaintiffs objected to this, citing their correspondence and discussions with Mr. Pugh between 1988 and 1989 during which Mr. Pugh had allegedly indicated that the initial premium payment would sufficiently fund the Policy for life.  By letter dated January 2004,[3] Mass Mutual responded to Plaintiffs' objections, informed them that they had misunderstood Mr. Pugh and the terms of the Policy, and again demanded payment.

Plaintiffs continue to contest Mass Mutual's demands, and allege that Defendants knowingly and intentionally engaged in deceptive and misleading policy illustrations that falsely represented the likelihood that the Vanishing Premium and Performance Schemes would perform as intended.  Specifically, Plaintiffs claim that Defendants offered illustrations of the Policy's likely performance based on "artificially inflated dividend scales and interest crediting rates; unjustifiable expense and mortality assumptions; and interest rate and investment earnings projections that had no reasonable basis in fact and were not supported by [Defendants'] actual then-current experience."  Compl. ¶ 18.  Plaintiffs seek legal and equitable relief on the following nine counts:

(1)     Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961 (2006), et seq.;

---

[3] The parties have not provided the Court with a specific date as to this letter.

(2)     Breach of express and implied contract;

(3)     Common law fraud;

(4)     Fraudulent inducement;

(5)     Breach of fiduciary duty;

(6)     Negligence;

(7)     Negligent misrepresentation;

(8)     Unjust enrichment and imposition of a constructive trust; and

(9)     Reformation.

**B.     Procedural Posture**

Plaintiffs filed the complaint against Defendants on July 17, 2006.  Defendants Mass

Mutual and Connecticut Mutual filed the instant Motion to Dismiss Pursuant to Federal Rules of

Civil Procedure 12(b)(6) and 9(b) on September 15, 2006.  Plaintiffs responded on September

29, 2006, and Defendants replied on October 10, 2006.

**II.     LEGAL STANDARD**

**A.     Rule 12(b)(6) Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits any defendant to a complaint,

counterclaim, or cross-claim to move for dismissal of a claim for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To prevail on this motion, the movant

must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102

(1957); accord Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (holding that

granting a 12(b)(6) motion is appropriate where "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief"). Because a 12(b)(6) motion is intended to resolve the merits of a claim or applicability of defenses, it should be granted only "in very limited circumstances." Rogers v. Jefferson-Pilot Ins. Co., 883 F.2d 324, 325 (4th Cir. 1969). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

In deciding this motion, the court must accept a plaintiff's well-pled factual allegations in the complaint as true, and construe the pleadings, facts, and all reasonable inferences in the light most favorable to the plaintiff. Allbright v. Oliver, 510 U.S. 266, 268, 114 S. Ct. 807, 810 (1994); Ibarra v. United States, 120 F. 3d 472, 474 (4th Cir. 1997). However, the court need not assume the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 (1986). Courts will not dismiss a plaintiff's claim on a Rule 12(b)(6) motion merely because the complaint requests inappropriate relief or mischaracterizes the relevant legal theories. See Bowers v. Hardwick, 478 U.S. 186, 201, 106 S. Ct. 2841, 2849 (1986) (Blackmun, J., dissenting) ("[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.") (citations omitted).

Plaintiffs contend that the Court is not entitled to look beyond the pleadings in order to rule on Defendants' motion to dismiss. Supplementing Defendants' motion is an appendix containing twenty exhibits, which Plaintiffs claim "were neither referred to nor incorporated in

the Complaint." Pl.'s Brief Opp. Defs.' Mot. Dismiss 2.  Although Plaintiffs' objection is well-taken, it is not applicable to Defendants' appendix in its entirety.  A court may look to evidence beyond the pleadings when the plaintiff fails to introduce a pertinent document as part of the complaint.  In such a case, the defendant "may attach the document to a motion to dismiss the complaint and the court may consider the same without converting the motion to one for summary judgment." Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) (quoting Gasner v. County Dindwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995)).  Thus, "[a]ny documents referenced in the complaint can properly be attached to" a defendant's motion to dismiss, id., and a court may consider such documents in determining the motion to dismiss if the documents were "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (citing Phillips v. LCI Int'l, 190 F.3d 609, 618 (4th Cir. 1999)).

A number of the documents submitted by Defendants are "integral to and explicitly relied on in the complaint."  These include the Policy (Exhibit 1), the Policy illustrations (Exhibit 2), the Conditional Advance Premium Receipt (Exhibit 9), and the supporting case law advanced by Defendants (Exhibits 10–20).  All remaining exhibits offered by Defendants, predominantly letters of correspondence between the parties, are excluded for purposes of resolving the instant motion.

### B.   Rule 9(b) Pleadings with Particularity

Federal Rule of Civil Procedure 8(a) requires only general "notice" pleading: "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plaint statement of the claim showing that the pleader is entitled to relief, and (3) a demand

for judgment . . . ." Fed. R. Civ. P. 8(a). One notable exception to this general rule is found in Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

To satisfy this heightened pleading requirement, a plaintiff must allege the identity of the person who made the fraudulent misrepresentation, as well as the time, place, and content of the misrepresentation. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Conditions of a person's mind, such as malice, intent, and knowledge, may be averred generally. Id.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Thus, if a party fails to plead fraud with sufficient particularity, the court may allow the party to amend the complaint and meet the pleading requirements imposed by Rule 9(b). See, e.g., Edwards, 178 F.3d at 242. Leave to amend should be denied only "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Id. (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

### C.    Choice of Law

Neither party disputes the application of Virginia law in this case. In this jurisdiction, "[d]isputes over life insurance contracts are determined by the law of the state where the insured was domiciled at the time she applied for the policy." Dennis v. Aetna Life Ins. & Annuity Co., 873 F. Supp. 1000, 10003 (E.D.Va. 1995); see also Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) (noting that the law of the place of the alleged wrong determines the substantive law along with the place of delivery of the policy). Plaintiffs admit citizenship in the Commonwealth of

Virginia, as well as residency in the City of Poquoson.  Furthermore, Plaintiffs have alleged that all discussions and events relating to the Policy, including their application for the Policy, occurred while they were domiciled in Virginia.  Thus, for purposes of resolving the instant motion, the Court will apply Virginia law.

III.    ANALYSIS

A.    **Statute of Limitations**

Defendants first seek to dismiss all of Plaintiffs' counts on the basis that the relevant statutes of limitations have expired.  The Policy was issued on December 18, 1988.  Plaintiffs filed suit on the Policy over seventeen years later, on July 17, 2006.  Defendants argue this passage of time precludes Plaintiffs from asserting the counts alleged in the complaint.

"The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005).  Although Defendants have the right to raise the statute of limitations affirmative defense at the present time, this question cannot be resolved appropriately on the instant Rule 12(b)(6) motion.  This question is therefore reserved for resolution at a later time, after the parties have had an opportunity to develop the facts of this case, by affidavit or otherwise.  As such, the Court **DENIES** Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' claims on this basis, and **RESERVES** ruling on this matter if and until Defendants raise it at a later time.

B.    **RICO Claim (Count One)**

10

Plaintiffs first allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1962(c), which provides the following:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim under § 1962(c), Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Plaintiff[s] must additionally show that (5) [they were] injured in [their] business or property (6) by reason of the RICO violation." D'Addario v. Geller, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003) (citations omitted).

Defendants challenge Plaintiffs' RICO claim on two grounds: (1) failure to plead with particularity at least two acts of racketeering to establish a pattern of racketeering required by the statute; and (2) failure to properly identify an "enterprise" as defined in RICO.  As defined by 18 U.S.C. § 1961(5), "pattern of racketeering activity" requires the commission of two predicate acts, including, as Plaintiffs allege, wire fraud (codified at 18 U.S.C. § 1343) and mail fraud (codified at 18 U.S.C. § 1341).  As defined by 18 U.S.C. § 1961(4), an "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

The Court agrees with Defendants as to this count.  Plaintiffs have failed to allege facts sufficient to establish both a "pattern of racketeering activity" and an "enterprise," as required by RICO.  It is therefore appropriate to dismiss Count One.

### (1)    Pleading Predicate Acts with Particularity

To the extent that Plaintiffs base the predicate acts of the alleged racketeering in fraud, they "must plead the alleged acts of fraud with particularity pursuant to Federal Rule of Civil

Procedure 9(b)." Hessek v. N. Am. Mortgage Ins. Serv., No. 2:02-CV-985, 2003 WL 23961817, at *1 (E.D. Va. Oct. 17, 2003). Plaintiffs allege both mail and wire fraud, both of which are contemplated as "racketeering activities" in 18 U.S.C. § 1961(1). To state a claim for wire or mail fraud, a plaintiff must allege (1) a scheme to defraud, (2) the defendant's participation in the scheme, (3) the defendant's specific intent to defraud, and (4) use of the United States wires or mails to further the scheme. Eplus Technology, Inc. v. Aboud, 313 F.3d 961, 966 (4th Cir. 1995). In Virginia, a plaintiff may make a showing of fraud by alleging (1) a false representation, (2) of a material fact, (3) made knowingly or intentionally, (4) made with the intent to mislead, (5) on which plaintiff relied, (6) and which resulted in damage to the plaintiff. Van Deusen v. Snead, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994).

 As an initial matter, courts should be "cautious" about basing a RICO claim on predicate acts of mail and wire fraud because it is the unusual fraud that fails to enlist the mails and wires at least twice in its perpetration. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." Id. RICO liability should follow only for "ongoing unlawful activities whose scope and persistence pose a special threat to social wellbeing." Id. (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)).

 Plaintiffs have not pled the alleged predicate acts of the racketeering activity with the particularity required by Rule 9(b). Rather, Plaintiffs have broadly alleged that Defendants engaged in a "fraudulent scheme . . . consist[ing] of numerous telephone calls made by MassMutual's and Conn Mutual's agents and other representatives," and "engaged in further

fraudulent and deceitful sales practices through its agent John S. Pugh . . . ."  Compl. ¶ 37(a).

Plaintiffs have offered no facts as to the time, place, or specific conduct of any misleading

communications.   Moreover, Plaintiffs have not identified any individuals who allegedly made

the fraudulent misrepresentations, other than Defendant John Pugh.  Such general allegations of

mail and wire fraud fail to meet the particularity requirements of Rule 9(b).

        (2)    <u>Enterprise</u>

To establish liability under 18 U.S.C. § 1962(c), a plaintiff "must allege and prove the

existence of two distinct legal entities: (1) a 'person'; and (2) an 'enterprise' that is not simply

the same 'person' referred to by a different name."  <u>Cedric Kushner Promotions, Ltd. v. King</u>,

533 U.S. 158, 161, 121 S. Ct. 2087, 2090 (2001).  This "distinctness" requirement is well known,

as only a person employed by or associated with an enterprise, and not the enterprise itself, may

violate section 1962(c).  RICO liability depends upon a showing that a defendant acted or

participated in the enterprise's affairs, and not just his or her own affairs.[4]  <u>Reves v. Ernst &</u>

<u>Young</u>, 507 U.S. 170, 185, 1133 S. Ct. 1163, 1173 (1993).

Plaintiffs attempt to satisfy the distinctness principle by alleging that "[t]he affiliated

organizations, through which MassMutual and Conn Mutual marketed and distributed their life

insurance products and annuities, constitute an enterprise as that term is defined in 18 U.S.C. §

1961," Compl. ¶ 35, while "MassMutual and Conn Mutual are persons as defined in 18 U.S.C. §

1961."  Compl. ¶ 35.  Notwithstanding their attempt to distinguish "persons" from the

---

[4] In this jurisdiction, the distinctness principle applies exclusively to 18 U.S.C. § 1962(c),
but not to the other prohibited acts contemplated by RICO, codified at § 1962(a) and § 1962(b).
<u>New Beckley Mining Corp. v. Int'l Union, United Auto Workers</u>, 18 F.3d 1161, 1163 (4th Cir.
1994); <u>Busby v. Crown Supply</u>, 896 F.2d 833, 841 (4th Cir. 1990).

"enterprise," Plaintiffs have erred in naming the same entity as both: the enterprise and the persons constituting it are one in the same.  The allegation that Defendants' "affiliated organizations" constituted the enterprise creates a distinction without a difference between the alleged enterprise and the persons allegedly acting through it.  The complaint offers no facts regarding the formation, nature, or operation of the enterprise.  Additionally, Plaintiffs have failed to allege facts that associate Mass Mutual and Connecticut Mutual as an enterprise at the time of the alleged RICO violations, and have offered no facts to show that Defendants were acting outside the scope of their typical business affairs when the alleged predicate acts occurred.

In light of the foregoing deficiencies in Plaintiffs' RICO claim, the Court **GRANTS** Defendants' motion to dismiss with respect to Count One.  To the extent that Plaintiffs have failed to state a RICO claim on two independent grounds, the Court finds that granting Plaintiffs leave to amend the complaint in order to plead the predicate acts of wire and mail fraud with greater particularity, as permitted by Rule 15(a), would constitute a futile endeavor.  As such, the Count One is hereby **DISMISSED**.

### C.      Breach of Fiduciary Duty (Count Five)

Defendants move to dismiss Plaintiffs' breach of fiduciary duty claim on the grounds that no such duty exists.  Plaintiffs alleged Defendants owed them the "duty of good faith and fair dealing, the duty of full and fair disclosure, and the duty of care."  Compl. ¶ 80.  Additionally, Plaintiffs assert that Defendants "had a duty to provide complete and truthful information to Plaintiffs when selling" the Policy.  Compl. ¶ 81.

The Court agrees with Defendants that, in Virginia, no fiduciary relationship exists between an insurance company and the insured.  The Virginia Supreme Court has so held, stating

that "the relationship of confidence and trust which exists between insurer and insured is not a fiduciary relationship." State Farm Mutual Ins. Co. v. Floyd, 235 Va. 136, 143, 366 S.E.2d 93, 97 (1988). Although the interests of both parties may be "parallel and to some extent overlapping," their interests may diverge in some circumstances. Id. When that occurs, "[t]he insurer has the right to protect its own interest along with that of the insured. It is that factor which prevents the development of a fiduciary relationship between insurer and insured." Id.

Because Plaintiffs have failed to state a claim upon which relief can be granted with respect to their breach of fiduciary duty claim, the Court hereby **GRANTS** Defendants' motion to dismiss Count Five.

### D.     Common Law Fraud, Fraudulent Inducement, and Negligent Misrepresentation (Counts Three, Four, and Seven)

In addition to alleging the predicate acts of mail fraud and wire fraud on which they base their RICO claim, Plaintiffs allege three other claims rooted in fraud: common law fraud, fraudulent misrepresentation, and negligent misrepresentation. To survive the instant motion to dismiss, each of these claims must meet the heightened pleading requirement imposed by Federal Rule of Civil Procedure 9(b).[5]

---

[5] Although the United States Court of Appeals for the Fourth Circuit has not ruled definitively on whether the heightened pleading standard of Rule 9(b) applies to a negligent misrepresentation claim, several district courts within the Fourth Circuit have applied Rule 9(b) to such claims. See Bear Hollow, L.L.C. v. Moberk, L.L.C., No. 5:05-CV-210, 2006 WL 1642126, at *4 (M.D.N.C. June 5, 2006) (requiring negligent misrepresentation claim to meet heightened pleading requirements of Rule 9(b)); Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) (holding that even though Rule 9(b) does not expressly refer to the tort of negligent misrepresentation, the rule applies to such claims); Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F. Supp. 2d 785, 798–99 (D. Md. 2002) (evaluating whether fraud and negligent misrepresentation claims met the specificity requirements of Rule 9(b)); Giannaris v. Cheng, 219 F. Supp. 2d 687, 694 (D. Md.

The Court disagrees with Plaintiffs' assertion that the complaint adequately identifies the time, place, content, and identity of the fraudulent author.  With respect to Plaintiffs' common law fraud claim (Count Three), the complaint predominantly consists of vague and conclusory allegations that Defendants "employed a scheme to defraud" and "made numerous false and misleading statements and representations or failed to state facts necessary to make their statements true or not misleading."  Compl. ¶ 59.  Rule 9(b) requires more.  Plaintiffs must identify the precise content of such false and misleading statements, as well as when, where, and by whom such statements were made.

Plaintiffs' fraudulent inducement claim (Count Four) and negligent misrepresentation claim (Count Seven) fall short for like reasons.  The allegation that Defendants "fraudulently induced Plaintiffs to purchase policies by making numerous misrepresentations and nondisclosures" lacks the particularity demanded by Rule 9(b) required to put Defendants on notice of their allegedly unlawful conduct.  Compl. ¶ 67.  Although Plaintiffs allege that Defendants "intentionally omitted and concealed material facts and misrepresented the essential nature and material risks of the product," Rule 9(b) demands greater specificity as to the time, place, and content of such omitted facts.  Likewise, the negligent misrepresentation claim lacks the necessary particularity regarding when, where, and by whom the misrepresentations were

2002) (quoting Rule 9(b) and stating that "[a] llegations of fraud or misrepresentation must be pleaded 'with particularity'"); Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."); Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 199–202 (M.D.N.C. 1997) (finding that Rule 9(b) is not limited to "willful misrepresentations," applying Rule 9(b) to a negligent misrepresentation claim, and noting that this interpretation is in accord "with the basis behind the rule and its original rationale").

16

made to Plaintiffs.  For these reasons, the Court **GRANTS** Defendants' motion to dismiss

Counts Three, Four, and Seven.  Pursuant to Rule 15(a), Plaintiffs may amend the complaint

within **eleven days** of the date of this order to cure any such pleading deficiencies.

###    E.       Unjust Enrichment and Imposition of a Constructive Trust (Count Eight)

Plaintiffs' unjust enrichment claim alleges that Defendants obtained payments from

Plaintiffs in the form of policy premiums, policy service charges, and other fees based upon

"misleading and fraudulent uniform sales presentations, marketing materials, and policy

illustration."  Compl. ¶ 105.  As a remedy, Plaintiffs pray for the creation of a constructive trust

in equity for the premiums that Defendants have allegedly unjustly received.

Defendants seek to dismiss this equitable count on the grounds that Plaintiffs have an

adequate remedy at law.  As a general rule, "when a party has an adequate remedy at law, he has

none in equity."  Neff v. Baker, 82 Va. 401, 405, 4 S.E. 620, 621 (1887) (quotations omitted).  In

Virginia, "[i]t is settled beyond questions that equity does not have jurisdiction of cases in which

the plaintiff has a full, complete, and adequate remedy at law, unless some peculiar feature of the

case comes within the province of a court of equity."  1 Michie's Jurisprudence of Virginia and

West Virginia, Equity, § 10 (2004).  However, it is also settled that where there is no certain and

adequate legal remedy, a court may order any equitable relief as justice requires.  Id.

The Court finds it inappropriate to dismiss Plaintiffs' claim of unjust enrichment and

prayer for equitable relief on the grounds offered by Defendants.  The case is inadequately

developed for the Court to determine whether and to what extent the legal remedy sought by

Plaintiffs will sufficiently compensate them for Defendants' allegedly unlawful conduct.

Consequently, the Court will not dismiss this claim on the basis that Plaintiffs have an adequate

remedy at law.

Nevertheless, Plaintiffs' prayer for a constructive trust must be dismissed by necessity for failure to plead the alleged fraud with requisite particularity.  To the extent that Plaintiffs base their claim for a constructive trust on Defendants' "deception, fraud, misrepresentation, false pretense, false promise or the knowing concealment, suppression or omission of material facts," Compl. ¶ 109, they must plead the facts supporting the allegations of fraud with specificity.  In re Nova Real Estate Inv. Trust, 23 B.R. 62, 67 (Bankr. E.D. Va. 1982).  As the Court has already explained, Plaintiffs' allegations of fraud and misrepresentation fail to satisfy the heightened pleading requirements imposed by Rule 9(b).  Accordingly, Plaintiffs' prayer for relief on such claims must also fail.  The Court therefore **GRANTS** Defendants' motion to dismiss Count Eight with the right of Plaintiffs to file an amended complaint setting forth the predicate facts. Therefore, the Court **RESERVES** the right to reconsider this count to the extent Plaintiffs cure the pleading deficiencies with respect to their fraud-based claims.

### F.      Reformation (Count Nine)

In addition to damages and the imposition of a constructive trust, Plaintiffs pray for equitable reformation of the insurance contract.  Supporting this claim, Plaintiffs allege that the Policy is a product of fraudulent unilateral mistake or mutual mistake.  Compl. ¶ 115–16. Defendants seek dismissal of this claim by rejecting that the Policy was produced by fraudulent unilateral or mutual mistake.  Moreover, Defendants move to dismiss this claim because Plaintiffs have an adequate remedy at law, which this Court has already rejected as an improper means of resolving the instant dispute at this time.

In Virginia, the equitable remedy of reformation provides relief against a mistake of fact

in a written instrument in two circumstances: (1) a mutual mistake in which both parties enter into a written agreement in the bilaterally mistaken belief that it reflects their antecedent agreement, and (2) a unilateral mistake, in which a single party is mistaken as to the content of the written agreement, but where the mistake resulted from a misrepresentation or fraud perpetrated by the other party.  Blessing v. Beatty, 44 Va. (1 Rob.) 287, 298 (1842).  Where a party relies upon fraud or mutual mistake as the grounds for equitable reformation, it must set forth in the pleadings the manner in which the fraud was perpetrated or mistake was made, as well as the ends to be accomplished by the agreement.  Beach v. Bellwood, 104 Va. 170, 183, 51 S.E. 184, 189 (1905).

After reviewing the facts and allegations of the complaint in the light most favorable to Plaintiffs, the Court finds no basis in the plea for reformation based on the mutual mistake of the parties.  Although Plaintiffs allege that the "differences between the respective expectations and understanding of the parties . . . are the result of a mutual mistake of fact," they have not offered any facts to support this allegation.  To the contrary, the pleadings and Policy itself demonstrate Defendants' consistent understanding of the insurance agreement.  Any "mistake" warranting reformation must have been unilateral and fraudulently induced by Defendants.

As with Plaintiffs' other claims based in fraud, the prayer for reformation fails for insufficient particularity as to the time, place, and content of such fraud or misrepresentations that resulted in Plaintiffs' alleged unilateral mistake.  Where Plaintiffs' claims of common law fraud, fraudulent inducement, and negligent misrepresentation claims fail for lack of Rule 9(b) particularity, so too must fail any equitable remedies relying on such claims.  As such, the Court **GRANTS** Defendants' motion to dismiss Count Nine.  However, the Court **RESERVES** the

right to reconsider this count to the extent Plaintiffs cure the pleading deficiencies with respect to their fraud-based claims.

### G.       Breach of Express and Implied Contract (Count Two)

Central to this lawsuit is the allegation that Defendants breached an express contract in which they promised that Plaintiffs' prepayment of premiums at the time of purchase would fund the cost of the Policy for the life of the insured without reducing the death benefit or depleting the cash value of the policies.  Compl. ¶ 44.   In addition to this express agreement, Plaintiffs also allege Defendants breached an implied covenant of good faith and fair dealing that arose "in connection to the policies" by impairing or frustrating the rights of Plaintiffs to receive the benefits promised.  Compl. ¶ 52.

Defendants move to dismiss this count on three grounds.  First, the unambiguous terms of the Policy mandate dismissal of the complaint.  Second, Defendants contend that, since the Policy is unambiguous on its face, Plaintiffs are not entitled to vary or interpret its terms with extrinsic parol evidence.  Finally, Defendants rely upon the legal principle that the law will not impose an implied contract where the contracting parties possess an express and enforceable contract ordering their respective rights.

### (1)       Unambiguous Terms of the Policy

The first issue before the Court is whether it is appropriate to dismiss a plaintiff's breach of contract claim on a Rule 12(b)(6) motion because the contract in dispute is clear and unambiguous on its face.  If it is appropriate, the subsequent issue is whether the Policy is sufficiently unambiguous on its fact to warrant dismissal of Plaintiffs' breach of contract claim.

Defendants contend that "[n]umerous courts have dismissed claims that are contradicted

by the express and unambiguous terms of a contract." Defs.' Mot. Dismiss 12.  To support this proposition, however, Defendants point to two cases outside this jurisdiction in which the court dismissed a plaintiff's breach of contract claim on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, *not* on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), which is the motion now before this Court.  In view of these legal precedents, dismissing Plaintiffs' breach of contract claim on the grounds that the Policy is facially unambiguous would be inappropriate unless the Court first converts the instant motion to a motion for summary judgment, as permitted by Rule 12(b).

On at least one occasion, however, the Fourth Circuit has addressed a district court's decision granting a defendant's Rule 12(b)(6) motion to dismiss a plaintiff's breach of contract claim because the written agreement was unambiguous.  In Stewart v. Pension Trust of Bethlehem Steel Corp., the Fourth Circuit held that the district court was not required to convert the plaintiff's Rule 12(b)(6) motion to dismiss into one for summary judgment because the district court had not considered any evidence beyond the written agreement. 12 F. App'x 174, 176 (4th Cir. 2001).  The court then reviewed the district court's decision to grant the defendant's motion to dismiss *de novo*, ultimately finding that, although the contract was in fact unambiguous, the district court had failed to give due consideration to the plaintiff's factual allegations, which should have been regarded as true in deciding the Rule 12(b)(6) motion.  Thus, in view of Stewart, this Court may dismiss Plaintiffs' breach of contract claim on the basis of Rule 12(b)(6) if it finds the Policy is unambiguous with respect to all of Plaintiffs' breach of contract allegations; however, this decision will prevail only if due consideration is given to Plaintiffs' factual allegations contained in the complaint.

Defendants assert that "Plaintiffs' Policy fully disclosed that they had a continuing contractual obligation to pay premiums annually," and that, "in at least three different places, the Policy declares that premiums are paid annually."  Defs.' Mot. Dismiss 13.  But the Policy is not so clear.  One portion of the written agreement, identified as "Policy Specifications," features a schedule of premium payments due on the Survivorship Additional Benefits Riders indicating an annual premium of "$57,043.32" in Year 1, but an annual premium of "$0.00" until "Age 65."  Moreover, as Plaintiffs point out, the Policy is allegedly ambiguous as to the source of future premium payments.  In light of these considerations, the Court **DENIES** Defendants' motion to dismiss Count Two at this time.

(2)      Parol Evidence

Defendants object to Plaintiffs' use of parol evidence to "vary or interpret the terms of the Policy," which is "clear and unambiguous on its face."  Defs.' Mot. Dismiss 13.  In Virginia, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, or explain the terms of a complete, unambiguous, and integrated written contract.  Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth., 270 Va. 309, 316, 618 S.E.2d 323, 326–27 (2005).  This rule is designed to promote certainty and stability in contracts, and is based on the notion that when parties reduce their mutually-agreed upon terms to writing, the writing, if clear and unambiguous, furnishes superior evidence of the scope and meaning of the agreement in dispute.  Doganieri v. United States, 520 F. Supp. 1093, 1097 (N.D.W. Va. 1981) (citations omitted).

Although the parol evidence rule "has nowhere been more strictly adhered to in its integrity than in Virginia," Erlich v. Hendrick Construction Co., 217 Va. 108, 112, 225 S.E.2d

22

665, 668 (1976), there are a number of circumstances in which the rule does not apply. "While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written agreement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply where the writing on its face is ambiguous, vague or indefinite, or does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties." Shockey v. Westcott 189 Va. 381, 389, 53 S.E.2d 17, 20 (1949).  The inapplicability of the parol evidence rule is particularly true in the present circumstances: "[I]nsurance contracts, like other contracts, generally are to be construed according to their terms and without reference to parol evidence. However, resort to parol evidence is proper where a latent ambiguity exists in a particular insurance contract." S. Ins. Co. of Va. v. Williams, 263 Va. 565, 570, 561 S.E.2d 730, 733 (2002).

The Court rejects Defendants' contention that the Policy is sufficiently clear to deny Plaintiffs the opportunity to submit extrinsic parol evidence.  As noted, the Policy equivocates as to the schedule of premiums owed during the life of the policy.  Although some provisions favor Defendants' interpretation of the Policy, others favor Plaintiffs' interpretation.  As such the Court **DENIES** Defendants' request to strike Plaintiffs' extrinsic parol evidence at this time.

(3)    Implied Contract

Defendants finally seek dismissal of Plaintiffs' breach of contract claim by asserting the express contract with Plaintiffs should preclude the finding of any contravening implied contract. In Virginia, "[i]t is only in the absence of an express or of an enforceable contract between parties, that the law (whether in law or in equity) will, from circumstances, imply a contract

23

between them." Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 502, 96 S.E. 754, 760 (1918) (citing Grice v. Todd, 120 Va. 481, 91 S.E. 609 (1917)).

Defendants' reliance on this legal principle is inapposite. Plaintiffs have not alleged the existence of an implied *contract* that should prevail over the parties' express contract; rather, Plaintiffs allege that Defendants breached the implied *covenant* of good faith and fair dealing. It is well-known that, "[u]nder Virginia law, every contract contains an implied covenant of good faith and fair dealing in the performance of the agreement." Penn. Life Ins. Co. v. Bumbrey, 665 F. Supp. 1190, 1195 (1997). The Court therefore **DENIES** Defendants' motion to dismiss Plaintiffs' allegation that Defendants breached an implied covenant of good faith and fair dealing.

### H.     Negligence (Count Six)

Defendants seek dismissal of Plaintiffs' negligence claim on two grounds. First, the economic loss doctrine precludes recovery in tort for damages based solely on economic loss. Fundamental to this argument is Defendants' assertion that Plaintiffs cannot prevail on any tort claim because only a contractual relationship existed between the parties. Second, Defendants seek dismissal based on Plaintiffs' contributory negligence.

(1)     Economic Loss Doctrine

Virginia recognizes the economic loss doctrine, see Gerald M. Moore & Son, Inc. v. Drewry, 251 Va. 277, 279, 467 S.E.2d 811, 813 (1996), which stands for the proposition that if a plaintiff's injury is only to property that is the subject of a contract, any loss in value is a matter of "disappointed economic expectation," for which relief lies exclusively in contract, not tort. Factory Mutual Ins. Co. v. DLR Contracting, Inc., No 3:04-CV-834, 2005 WL 2704502, at *6

24

(E.D. Va. Oct. 20, 2005).  This doctrine emerged from the proposition that "losses suffered as a result of the breach of a duty assumed only be agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.  <u>Filak v. George</u>, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004).  The Fourth Circuit has described this doctrine in more explicit terms:

> Under Virginia law, a tort claim normally cannot be maintained in conjunction with a breach of contract claim.  An exception arises where a party establishes an independent, willful tort that is factually bound to the contractual breach but whose legal elements are distinct from it.  It is not sufficient for plaintiff to show that defendant willfully desired to breach the contract for its own benefit.  Instead, Plaintiff must show that defendant maliciously desired to injure plaintiff.

<u>Erdmann v. Preferred Research, Inc.</u>, 852 F.2d 788, 791 (4th Cir. 1988) (citations and quotations omitted).  Thus, the economic loss rule does not obtain "where the breach amounts to an independent, willful tort."  <u>Kamlar Corp. v. Haley</u>, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983).

The issue, therefore, is whether Plaintiffs have sufficiently alleged an injury and tort independent of the breach of contract claim.  Plaintiffs have alleged common law fraud, fraudulent inducement, and negligent misrepresentation, all of which suggest a duty "not existing between the parties solely by virtue of contract."  <u>Foreign Mission Bd. of the Southern Baptist Convention v. Wade</u>, 242 Va. 234, 241, 409 S.E.2d 144 (1991).  As noted previously in the Eastern District of Virginia, "fraud is an independent, willful tort under Virginia law," <u>Hewlette v. Hovis</u>, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004), and sufficient to overcome the limitations on recovery imposed by the economic loss doctrine.  Nevertheless, this Court has dismissed the independent fraud-based claims for Plaintiffs' failure to meet the pleading requirements created by Rule 9(b).  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Count Six on the

grounds of the economic loss doctrine.  However, to the extent Plaintiffs appropriately amend the complaint to cure the pleading deficiencies within eleven days of the date of this order, the Court **RESERVES** the right to consider Plaintiffs' negligence claim.

(2)    Contributory Negligence

Defendants finally argue that, even if Plaintiffs could state a claim in tort, the negligence count is barred by Plaintiffs' contributory negligence as a matter of law.  Supporting this proposition, Defendants rely on the legal principle that, "one who signs an application for life insurance without reading the application or having someone read it to him is chargeable with notice of the application's content and is bound therein."  General Ins. Co. of Roanoke, Inc. v. Page, 250 Va. 409, 412, 464 S.E.2d 343, 345 (1995).

In viewing the facts alleged in the complaint in the light most favorable to Plaintiffs, the Court cannot conclude at this time that Plaintiffs acted with such negligence in their negotiations and dealings with Defendants to bar the negligence claim.  To dismiss such a claim on these grounds, without additional opportunity to develop the facts, would be inappropriate at such a preliminary stage in the dispute.  As such, the Court **DENIES** Defendants' motion to dismiss Count Six at this time on the basis of contributory negligence.

## I.    Punitive Damages

Defendants move to dismiss Plaintiffs' prayer for punitive damages on the grounds that the instant action is a "run-of-the-mill breach of contract action for which punitive damages do not lie."  Defs.' Mot. Dismiss 29.  In Virginia, the "law requires proof of an independent, willful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of punitive damages, regardless of the motives underlying the breach."  Bettius & Sanderson, P.C.

26

v. Nat'l Union Fire Ins. Co., 839 F.2d 1009, 1015 (4th Cir. 1988) (citations omitted).  This is especially true in the instant context: "Virginia law does not allow punitive damages when an insurer, *in bad faith*, delays or fails to satisfy a claim against the insured."  Id. (emphasis added). Thus, even if the Court found that Defendants acted with "malice, wantonness, or oppression," it cannot award punitive damages if, as Defendants assert, the instant suit is a "pure contract action."  Id.

The issue before the Court in resolving this matter is whether the instant action is one of pure contract.  The foregoing analysis and conclusions of this Court have disposed of two claims for failure to state a claim upon which relief can be granted: Plaintiffs' RICO claim (Count One), and breach of a fiduciary duty (Count Five).  The Court has dismissed five claims, subject to Plaintiffs' right to amend, for failure to plead the claims with requisite particularity required by Rule 9(b): common law fraud (Count Three), fraudulent inducement (Count Four), negligent misrepresentation (Count Seven), negligence (Count Six), unjust enrichment and imposition of a constructive trust (Count Eight), and reformation (Count Nine).  The Court has not dismissed one remaining claim: breach of express or implied contract (Count Two).  To the extent the Court has narrowed Plaintiffs' suit to a pure breach of contract action, Defendants' contention that punitive damages are not available as a matter of law must prevail.  The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiffs' demand for punitive damages.  However, the Court **RESERVES** the right to address this matter again in the future to the extent Plaintiffs sufficiently amend the pleadings.

Plaintiffs may file such amended pleadings within eleven (11) days of the date of this order, and if so, Defendants shall file a responsive pleading within eleven (11) days after service

of Plaintiffs' amended pleading, pursuant to Rule 15(a).

      The Clerk of the Court is **DIRECTED** to forward copies of this Memorandum Opinion

and Order to counsel of record for all parties.

      **IT IS SO ORDERED.**

_____/s/_____
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

November 9, 2006
Norfolk, Virginia